IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT ARZATE,

                    *Plaintiff*,

        v.

AWESOME LIFE GROUP, LLC,

                    *Defendant*.

Civil Action No. 2:25-cv-21

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Robert Arzate ("Arzate") alleges that Defendant Awesome Life Group, LLC ("ALG"), a credit repair organization, fraudulently promised to have negative items removed from his credit report but failed to do so. He brings claims against ALG under the Credit Repair Organizations Act, the California Credit Services Organizations Act, the Pennsylvania Credit Services Act, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law. (ECF No. 14). ALG filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 18). For the following reasons, the Court will grant the motion in part and deny the motion in part.

### I.        FACTUAL BACKGROUND

ALG is a credit repair organization that provides consumer services that aid the consumer in getting negative items removed from their credit reports and history. (ECF No. 14, p. 2). Arzate sought to improve his credit, and he spoke to an ALG representative over the telephone on March 23, 2022, about its services. (*Id*.). Arzate claims that the ALG representative told him that ALG would be able remove certain derogatory remarks from his credit report by submitting disputes to various credit agencies on his behalf. (*Id*. at 3). Arzate signed a contract with ALG

1

through which he agreed to pay for ALG's services, and signed a separate disclosure document titled CONSUMER CREDIT FILE RIGHTS UNDERSTATE AND FEDERAL LAW. (*Id*. at 4). Arzate made an initial payment of $199 for various services. (*Id*. at 5). Arzate claims he was forced to pay an additional $20 per month for credit monitoring services. He paid $150 for ALG's services for seven months. (*Id*. at 5-6). ALG failed to get the derogatory information removed from Arzate's credit or improve his credit score. Arzate cancelled his agreement with ALG, and ALG declined to refund Arzate. (*Id*. at 6).

## II.    STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is

present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If parties present matters outside the pleadings and the court does not exclude them, the motion must be converted to a motion for summary judgment. *See* FED. R. CIV. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment if they are integral to the allegations in the complaint and are authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint"); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"). Here, the Court will consider the March 23, 2022, contract between the parties when reviewing the allegations in the Second Amended Complaint. (ECF No. 19-2).

### III.    ANALYSIS

**A.  Claims under the Credit Repair Organizations Act**

Section 1679g of the Credit Repair Organizations Act ("CROA") authorizes private civil actions against persons who violate the CROA.  15 U.S.C. § 1679g ("Any person who fails to comply with any provision of this subchapter with respect to any other person shall be liable to such person ....").  Arzate alleges six separate bases to support his claims that ALG violated CROA.  The Court finds, as discussed below, that Arzate has adequately pled his claims.

*1.  Application of Rule 9(b)*

The parties disagree on the pleading standard the Court should apply for its Rule 12(b)(6) analysis of Arzate's CROA claims.  ALG argues that Rule 9(b) applies to Arzate's claims because they are premised on a course of fraudulent conduct and are therefore subject to the heightened pleading standard.[1]  It cites cases that apply the heightened pleading standard to claims that are grounded in fraud or are sound in fraud even if the claimed conduct would not necessarily give rise to a cause of action for deceit at common law.   (ECF No. 19, pp. 6-7).  Arzate argues that Rule 8(a) applies because his CROA claims involve misrepresentations or deceptive acts, and not fraud.  He notes that the CROA is a strict liability statute and it omits the scienter requirement of common law fraud.  According to Arzate, the CROA is a consumer protection statute, and requiring a heightened pleading standard would impose an unnecessary impediment to consumers seeking to assert their consumer rights.  (ECF No. 21, pp. 3-7).

As the Court finds that Arzate's complaint contains sufficient factual allegations to withstand a 12(b)(6) challenge under either standard, it will apply Rule 9.  "Under [Rule 9(b)], the complaint must describe the time, place, and contents of the false representations or

---

[1] Rule 9(b) states that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  FED.  R. CIV. P. 9(b).

omissions, as well as the identity of the person making the statement and the basis of the statement's falsity." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 680 (3d Cir. 2023) (citation omitted).  To properly plead a claim for fraud, a plaintiff must allege five elements: (1) "a specific false representation of material fact;" (2) "knowledge by the person who made it of its falsity;" (3) "ignorance of its falsity by the person to whom it was made;" (4) "the intention that it should be acted upon;" and (5) "that the plaintiff acted upon it to his damage." *Sun Co., Inc. (R & M) v. Badger Design & Constructors, Inc.,* 939 F. Supp. 365, 369 (E.D. Pa. 1996) (citing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir. 1992)).  This standard requires one to plead "the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged" by pleading or alleging "the date, time and place of the alleged fraud or otherwise inject[ing] precision or some measure of substantiation into a fraud allegation."  *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 720 (E.D. Pa. 2013) (Robreno, J.) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

   *2.  15 U.S.C. § 1679b(a)(1)*

   Section 1679b(a)(1) provides that no person may "make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing, or credit capacity to – any consumer reporting agency, or any person who has extended credit to the consumer."  15 U.S.C. § 1679b(a)(1).  Arzate pleads that ALG violated this provision as follows:

48. Defendant violated the above provision of the CROA through its making of, and advice to Plaintiff to make, statements regarding Plaintiff's creditworthiness that were not accurate. Upon information and belief, in connection with disputes Defendant submits to the credit reporting agencies on behalf of consumers and those it submitted on behalf of Plaintiff, Defendant uses stump letters designed to get accounts removed, without any concern or care for whether the information included in its stump letters is accurate with regards to a particular consumer, including Plaintiff.

(ECF No. 14, p. 7).

The Court finds that Arzate has sufficiently alleged a claim under § 1679b(a)(1) – that ALG submitted letters to credit reporting agencies on his behalf that he has never seen and were inaccurate. To the extent ALG argues that its contract with Arzate states that pursuant to its terms it did not agree to make any statements of fact on Arzate's behalf, and that Arzate had to provide accurate information to ALG, discovery will ultimately reveal whether the letters contained accurate information and whether the letters complied with the terms of the parties' contract.

### 3. *15 U.S.C. §§ 1679b(a)(3)-(4), 1679b(b)*

Section 1679b(a)(3) states that "[n]o person may—make or use any untrue or misleading representation of the services of the credit repair organization[,]" and pursuant to § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization." 15 U.S.C. § 1679b(a)(3)-(4). Section 1697b(b) states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed. " 15 U.S.C. § 1679b(b).

Arzate alleges that ALG violated §§ 1679b(a)(3)-(4) through its "affirmative representations" that information would be removed from his credit reports, regardless of the accuracy of any information being reported. (ECF No. 14, p. 8).  He further claims that this alleged misrepresentation by ALG occurred on March 23, 2022, when ALG's representative "represented and suggested to Plaintiff that it would be able to remove any information from Plaintiff's credit reports, regardless of whether it was inaccurate, obsolete, or otherwise could reasonably be removed from Plaintiff's credit." (*Id*.).  Arzate contends that ALG misrepresented the information it could have removed from his credit report in order to convince him to use its services, despite not knowing if it could actually get the information removed.  Arzate takes issue with the fact that the representative of ALG told him that his credit score would improve within three months if he signed up for their services, but they failed to deliver any meaningful improvement to his credit.  He further contends that ALG forced him to pay $20 a month for credit monitoring, and it represented that such services were a necessary and required part of ALG's services, when such services were grossly overpriced and actually free and available.  He claims that despite the provisions of the contract, ALG charged for services before performing them.  He also alleges that the contractual terms contradicted the conversation he had with an ALG representative.  (ECF No. 14, pp. 8-11).

As to Section 1697b(b), Arzate pleads that ALG violated this provision as it charged and received money from him in exchange for the performance of services before the services were performed.  He contends that ALG did not perform all of the services outlined for the initial, upfront charge.  (*Id*. at p. 11).

ALG argues that Arzate failed to specifically allege the "who," "when," and "where" of the alleged fraud.  The Court disagrees.  Arzate pled that he spoke with an employee of ALG on

the telephone on March 23, 2022.  He thoroughly outlined the specific information he was given and the representations made to him about how his credit report would be fixed.  He takes issue with ALG not delivering results in three months, despite its representation over the telephone that it would do so.  He further claims that ALG forced him to pay $20 a month for "credit monitoring services," that were otherwise cheaper or free from alternate providers.  All of this is sufficient to put ALG on notice of the "who," "when," and "where" of the claims he is raising under §§ 1679b(a)(3)-(4) and 1679b(b).  He has met the heightened pleading standard of Rule 9(b).

       4. *15 U.S.C. §§ 1679c, 1679d, and 1679f(a)-(b)*

Section 1679c states that "[a]ny credit repair organization shall provide any consumers with the following written statement before any contract or agreement between the consumers and the credit repair organization is executed."  15 U.S.C. § 1679c.  Arzate pleads that ALG violated this provision by providing the statutorily-required disclosure at 9:16 AM on March 23, 2022, which was after he signed the agreement for services at 9:12 AM.  (ECF No. 14, p. 12).  According to Arzate,

> Had Defendant complied with its disclosures requirements, and provided the disclosures before contracting with Plaintiff, Plaintiff's contracting decision would have been informed by the true nature of Defendant's dispute and removal parameters, rather than the contradictory and misleading way Defendant orally represented its services to Plaintiff, and thus would have put Plaintiff in a better position to realize the deceptive and misleading nature of Defendant's conduct prior to diverting thousands of dollars towards ineffective and misrepresented services.

(*Id*.).  The Court finds that Arzate has properly set forth a claim.  ALG's argument that Arzate's signature on the contract did not constitute an execution of the contract is a matter to be dealt with after discovery unearths the precise facts surrounding Arzate's allegations.

Section 1679d(a)(2) provides that "no services may be provided by any credit repair organization for any consumer – before the end of the 3-business day period beginning on the date the contract is signed." 15 U.S.C. § 1679d(a)(2). Arzate pled that ALG violated this provision,

> through its provision of "services" to Plaintiff within the 3-business day period following Plaintiff signing the contract with Defendant. In order for Defendant's upfront charge, assessed the same day Plaintiff signed the contract with Defendant, to be even plausibly lawful under § 1679b(b), Defendant would've had to have performed some service the day Plaintiff signed the contract justifying the charge. Defendant's premature provision of services, and corresponding charge for such services, again deprived Plaintiff the time value of money of such prematurely retained payments.

(ECF No. 14, p. 13). The Court finds that Arzate has properly set forth a claim.

Sections 1679f(a)-(b) provide that any waiver, or attempt to attain a waiver, by a consumer of any protection provided or any right of the consumer under the CROA, results in that contract being considered void and unenforceable. Arzate pleads that ALG violated this provision as follows:

> In the parties' contract, Defendant includes a broad limitation of liability clause which feebly attempts to shield Defendant from any potential liability stemming from its provision of services to Plaintiff. Further, Defendant's inclusion of a merger and integration clause in its contract, when it has otherwise engaged in deceptive and misleading representations regarding the parameters of its services which contradict the contractual language, represents its attempt to cause Plaintiff to waive the protections provided by the CROA stemming from the way Defendant represented its services to Plaintiff outside the contractual context. Additionally, Defendant's website, the terms of which Defendant attempts to apply to the parties' relationship, contains a number of representations regarding its services, yet provides a disclaimer attempting to insulate itself from liability from any deceptive nature of the representations it has made on its website. Such efforts once again demonstrate Defendant's attempts to insulate itself from liability in connection with the credit repair services it represents and provides to consumers, including Plaintiff.

(ECF No. 14, pp. 13-14). The Court finds that Arzate has adequately alleged a claim that ALG attempted to get him to waive the rights provided by the CROA through its contract with him.

The Court will deny ALG's motion as it relates to all claims brought by Arzate under the CROA.

### B.  State law claims

At Count II, Arzate brings a claim against ALG for violating the California Credit Services Organization Act of 1984.  (ECF No. 14, pp. 14-16).  ALG is a Pennsylvania limited liability company with its principal place of business in Pennsylvania.  Arzate reached out to ALG about its services.  The contract between ALG and Arzate states, "This agreement shall be governed by and construed in accordance with the laws of the State of Pennsylvania, without regard to conflicts of law provisions." (ECF No. 19-2, p. 6).  First, "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them."  *Kruzits v. Okuma Mach. Tool*, 40 F.3d 52, 55 (3d Cir. 1994) (citation omitted).  The Court holds that Arzate is precluded from stating a claim against ALG under California law.  Second, the Court concurs with ALG that even if there were no choice-of-law provision in the parties' contract, Pennsylvania law would apply.  For these reasons, Count II will be dismissed.

Arzate also brings a claim that ALG violated the following provisions of the Pennsylvania Credit Services Act ("PCSA") (Count III):  73 P.S. § 2183(1) by charging and receiving money prior to full performance of the agreed upon services; 73 P.S. § 2183(4) in the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4); and 73 P.S. § 2189 in much the same way it violated § 1679f(b).  (ECF No. 14, pp. 17-18).  ALG takes issue with Arzate failing to repeat his factual allegations within Count III.  When his causes of action under the PCSA are reviewed in light of the entirety of the factual allegations in the pleadings and those applicable to the

10

corresponding CROA sections, the Court finds that he adequately pled violations of the PCSA.

Count III will proceed.

Lastly, Arzate brings a claim under the Pennsylvania's Unfair Trade Practices and

Consumer Protection Law (PUTPCPL), 73 P.S. § 201-1 *et seq.* (Count IV), alleging that

"[p]ursuant to the PCSA under 73 P.S. § 2190(a), a violation of the PCSA constitutes violations

of the PUTPCPL." (ECF No. 14, p. 14). He goes on to state:

> 89. As such, Defendant violated the PUTCPL through the nature of their
> violations of the PCSA, discussed above.
> 90. Furthermore, the PUTCPL defines a number of "unfair methods of
> competition" and "unfair or deceptive acts or practices," which include: causing
> likelihood of confusion or of misunderstanding as to the source, sponsorship,
> approval or certification of goods or services; causing likelihood of confusion or
> of misunderstanding as to affiliation, connection or association with, or
> certification by, another; representing that goods or services have sponsorship,
> approval, characteristics, ingredients, uses, benefits or quantities that they do not
> have or that a person has a sponsorship, approval, status, affiliation or connection
> that he does not have; representing that goods or services are of a particular
> standard, quality or grade . . . if they are of another; advertising goods or services
> with intent not to sell them as advertised; or engaging in any other fraudulent or
> deceptive conduct which creates a likelihood of confusion or of
> misunderstanding."
> 91. As discussed at length above, Defendant engaged in a number of
> unfair methods of competition and unfair or deceptive acts or practices through
> the manner in which they represented their services to Plaintiff and subsequently
> provided services to Plaintiff.

(ECF No. 14, pp. 18-19). The Court finds that at this stage, Arzate has sufficiently pled how his

factual allegations give rise to a claim under the PUTPCPL. The PUTPCPL proscribes a wide

variety of specially defined conduct, and in addition, it contains an even broader catchall

provision. Count IV will proceed.[2]

---

[2] The dismissal of Count II will be with prejudice as the Court holds that any further amendment
would be futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.
1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith,
dilatory motive, prejudice, and futility); *see also* 3 James Wm. Moore et al., *Moore's Federal
Practice* ¶ 15.15 (3d ed. 2024) ("An amendment is futile if it merely restates the same facts as

## IV.    CONCLUSION

For the foregoing reasons, ALG's motion will be granted in part and denied in part by Order of Court to follow.

BY THE COURT:

s/  William S. Stickman IV
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

July 11, 2025
Date

---

the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").  Arzate has already amended his complaint twice.  (ECF No. 1-1, 5, 14).